# EXHIBIT B

DIP FINANCING AGREEMENT

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 1 of 12

# REVOLVING CREDIT AND SECURITY AGREEMENT
(DIP Loan Facility for L & H Trucking Company, Inc.)

REVOLVING CREDIT AND SECURITY AGREEMENT ("Agreement") dated as of August 20, 2010 between L & H Trucking Company, Inc., a Pennsylvania corporation (the "Borrower"); Lawson E. Longstreth, Sr., and Helen M. Longstreth (collectively referred to herein as the "Lenders"); and Glenn A. Longstreth and Lamanda M. Sullivan (collectively referred to herein as the "Third Parties").

## RECITALS

A. The parties hereto acknowledge that Borrower has filed for protection under Chapter 11 of the United States Bankruptcy Code for the Middle District of Pennsylvania, Harrisburg Division (Case No.: 10-06657), and has requested from the Lenders a debtor-in-possession loan facility ("DIP Loan Facility") to assist Borrower in continuing operations during the bankruptcy proceeding.

B. Lenders are willing to provide the DIP Loan Facility set forth herein to Borrower subject to the terms and conditions hereof.

C. The Third Parties hereby acknowledge that they are benefitted by the granting of the DIP Loan Facility to Borrower by Lenders and are willing to give a mortgage on certain real property they own located in Penn Township, York County, Pennsylvania, as additional collateral for the DIP Loan Facility.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE I
## DEFINITIONS

SECTION 1.01  Defined Terms. As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have the same meaning when used in the plural and vice versa):

"Agreement" means this Revolving Credit and Security Agreement, as amended, supplemented, or modified from time to time.

"Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in Pennsylvania are authorized or required to close under the laws of the State of Pennsylvania.

Page 2 of 12

Case 1:10-bk-06657-RNO   Doc 26-2   Filed 08/20/10   Entered 08/20/10 18:46:19   Desc
Exhibit Exhibit B - DIP Financing Agreement   Page 2 of 12

"Code" means the United States Bankruptcy Code as amended from time to time.

"Collateral" means all property given hereunder as security for the repayment of the Loans pursuant to Article VI of this Agreement.

"Commitment" means the Lenders' obligation to make Loans to the Borrower pursuant to Section 2.01 in the amount referred to therein.

"DIP Loan Facility" means the $250,000.00 credit facility extended to Borrower by Lenders as provided hereunder.

"Default" means any of the events specified in Section 7.01, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"Effective Date" means the date this Agreement and the DIP Loan Facility is approved by the Bankruptcy Court.

"Event of Default" means any of the events specified in Section 7.01, provided that any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"GAAP" means generally accepted accounting principles in the United States.

"Lien" means any mortgage, deed of trust, pledge, security interest, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), or preference, priority, or other security agreement or preferential arrangement, charge, or encumbrance of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction to evidence any of the foregoing).

"Loan Documents" means this Agreement, the Note, Mortgage and all other documents executed and delivered in connection with the DIP Loan Facility.

"Loans" shall have the meaning assigned to such term in Section 2.01.

"Mortgage" shall have the meaning assigned to such term in Section 3.01(3).

"Note" shall have the meaning assigned to such term in Section 2.04.

"Person" means an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, or other entity

Page 3 of 12

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 3 of 12

of whatever nature.

"Termination Date" means September 1, 2012.

## ARTICLE II
## AMOUNT AND TERMS OF THE LOANS

SECTION 2.01  Revolving Credit. The Lenders agree on the terms and conditions hereinafter set forth, to make loans (the "Loans") to the Borrower from time to time during the period from the Effective Date of this Agreement up to but not including the Termination Date in an aggregate amount not to exceed at any time outstanding Two Hundred Fifty Thousand Dollars ($250,000.00) (the "Commitment"). Within the limits of the Commitment, the Borrower may borrow, prepay pursuant to Section 2.05, and reborrow under this Section 2.01.

SECTION 2.02  Notice and Manner of Borrowing. The Borrower shall give the Lenders at least three (3) Business Days' prior written notice (effective upon receipt) of any Loans requested under this Agreement, specifying the date and amount thereof. Not later than 2:00 p.m. on the funding date of such Loan and upon fulfillment of the applicable conditions set forth in Article Ill, the Lenders will make such Loan available to the Borrower in immediately available funds.

SECTION 2.03  Interest.  The Borrower shall pay interest to the Lenders on the outstanding and unpaid principal amount of the Loans made under this Agreement at a rate per annum equal to Five Percent (5%). Interest shall be calculated on the basis of a 365 day year. Interest shall be paid in immediately available funds on the first day of each month, commencing October 1, 2010, at the address of Lenders set forth herein.

SECTION 2.04  Note. All Loans made by the Lenders under this Agreement shall be evidenced by, and repaid with interest in accordance with, a single promissory note of the Borrower in substantially the form of Exhibit A duly completed, in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00), dated the date of this Agreement, payable to the Lenders, and maturing as to principal on the Termination Date (the "Note"). The Lenders are hereby authorized by the Borrower to endorse on the schedule attached to the Note the amount of each Loan and of each payment of principal received by the Lenders on account of the Loans, which endorsement shall, in the absence of manifest error, be conclusive as to the outstanding balance of the Loans made by the Lenders; provided, however, that the failure to make such notation with respect to any Loan or payment shall not limit or otherwise affect the obligations of the Borrower under this Agreement or the Note.

SECTION 2.05  Prepayments. The Borrower may prepay the Note in whole or in part at any time with accrued interest to the date of such prepayment on the amount prepaid without penalty.

SECTION 2.06  Method of Payment.  The Borrower shall make each payment

Page 4 of 12

Case 1:10-bk-06657-RNO   Doc 26-2   Filed 08/20/10   Entered 08/20/10 18:46:19   Desc
Exhibit Exhibit B - DIP Financing Agreement   Page 4 of 12

under this Agreement and under the Note not later than 5:00 p.m. on the date when due in lawful money of the United States to the Lenders in immediately available funds. Whenever any payment to be made under this Agreement or under the Note shall be stated to be due on a Saturday, Sunday, or a public holiday, or the equivalent for banks generally under the laws of the State of Pennsylvania, such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of the payment of interest.

SECTION 2.07　　Use of Proceeds. The proceeds of the Loans hereunder shall be used by the Borrower to provide financing for conducting, managing and operating its business during its bankruptcy proceeding, including, without limitation, the payment of post-petition administrative expenses and to the extent necessary, unsecured priority claims.

## ARTICLE III
## CONDITIONS PRECEDENT

SECTION 3.01　　Condition Precedent to Initial Loan. The obligation of the Lenders to make the initial Loan to the Borrower is subject to the condition precedent that the Lenders shall have received on or before the day of such Loan, unless otherwise specifically waived by the Lenders, each of the following, in form and substance satisfactory to the Lenders:

(1)　　Note. The Note duly executed by the Borrower.

(2)　　Financing Statements. Financing Statements (UCC-1) duly filed under the Uniform Commercial Code in all jurisdictions necessary or, in the opinion of the Lenders, desirable to perfect the security interest in the Collateral created pursuant to this Agreement.

(3)　　Mortgage. A mortgage duly executed by the Third Parties and recorded in the Office of the Recorder of Deeds granting a Lien on the following tracts: (i) that certain unimproved 13.084 acres tract, more or less, located in Penn Township, York County, State of Pennsylvania and identified as Parcel Number: 67-44-000-ED-0006-C0-00000; and (ii) that certain improved 21.944 acres, more or less, tract located in the aforesaid Township and identified as Parcel Number: 67-44-000-ED-0035-J0-00000 (the "Mortgage").

(4)　　Title Certificates. Title certificates for all trucks, vehicles and trailers securing the Loans duly noting the Lenders as a secured party.

(5)　　Evidence of Bankruptcy Court Approval. Receipt of a copy of the Bankruptcy Order approving the DIP Loan Facility and this Agreement.

(6)　　Evidence of All Corporate Action by the Borrower. Certified (as of the date of this Agreement) copies of all corporate action taken by the Borrower, including resolutions of its Board of Directors, authorizing the execution, delivery, and performance of the

Loan Documents to which it is a party and each other document to be delivered pursuant to this Agreement.

(7) <u>Incumbency and Signature Certificate of the Borrower.</u> A certificate (dated as of the date of this Agreement) of the Secretary of the Borrower certifying the names and true signatures of the officers of the Borrower authorized to sign the Loan Documents to which it is a party and the other documents to be delivered by the Borrower under this Agreement.

ARTICLE IV
REPRESENTATION AND WARRANTIES

The Borrower represents and warrants to the Lenders that:

SECTION 4.01 <u>Incorporation, Good Standing, and Due Qualification.</u> The Borrower is a corporation duly incorporated, validly existing, and in good standing under the laws of the jurisdiction of its incorporation; has the corporate power and authority to own its assets and to transact the business in which it is now engaged or proposed to be engaged in; and is duly qualified as a foreign corporation and in good standing under the laws of each other jurisdiction in which such qualification is required.

SECTION 4.02 <u>Corporate Power and Authority.</u> The execution, delivery, and performance by the Borrower of the Loan Documents have been duly authorized by all necessary corporate action and do not and will not (1) require any consent or approval of the stockholders of such corporation; (2) contravene such corporation's charter or bylaws; (3) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination, or award presently in effect having applicability to such corporation; and (4) has been approved by the Bankruptcy Court.

SECTION 4.03 <u>Legally Enforceable Agreement.</u> This Agreement is, and each of the other Loan Documents when delivered under this Agreement will be legal, valid, and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

SECTION 4.04 <u>Ownership and Liens.</u> The Borrower has filed for protection under Chapter 11 of the United States Bankruptcy Code for the Middle District of Pennsylvania, Harrisburg Division and is a Debtor-in-Possession (Case No.: 10-06657).

ARTICLE V
AFFIRMATIVE COVENANTS

Subject to the bankruptcy proceeding, so long as the Note shall remain unpaid or the Lenders shall have any Commitment under this Agreement, the Borrower will:

Page 6 of 12

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 6 of 12

SECTION 5.01    Maintenance of Existence. Preserve and maintain its corporate existence and good standing in the jurisdiction of its incorporation, and qualify and remain qualified, as a foreign corporation in each jurisdiction in which such qualification is required.

SECTION 5.02    Maintenance of Records. Keep adequate records and books of account in which complete entries will be made in accordance with GAAP consistently applied, reflecting all financial transactions of the Borrower.

SECTION 5.03    Maintenance of Properties. Maintain, keep, and preserve all of its properties (tangible and intangible) necessary or useful in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted.

SECTION 5.04    Conduct of Business. Continue its business operations as conducted by it on the date of this Agreement.

SECTION 5.05    Maintenance of Insurance. Maintain insurance with financially sound and reputable insurance companies or associations in such amounts and covering such risks as are usually carried by companies engaged in the same or a similar business and similarly situated, which insurance may provide for reasonable deductibility from coverage thereof.

SECTION 5.06    Compliance With Laws. Comply in all respects with all applicable laws, rules, regulations, and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon it or upon its property.

SECTION 5.07    Reporting Requirements. Furnish to the Lenders the following:

(1)    Notice of Litigation. Promptly after the commencement thereof, notice of all actions, suits, and proceedings before any court or governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign, affecting the Borrower, which, if determined adversely to the Borrower, could have a material adverse effect on the financial condition, properties, or operations of the Borrower;

(2)    Notice of Defaults and Events of Default.   As soon as possible and in any event within three (3) days after the occurrence of each Default or Event of Default, a written notice setting forth the details of such Default or Event of Default and the action which is proposed to be taken by the Borrower with respect thereto;

(3)    Reports to Other Creditors.   Promptly after the furnishing thereof, copies of any statement or report furnished to any other party pursuant to the terms of any indenture, loan, or credit or similar agreement; and

(4)    General Information. Such other information respecting the condition or

Page 7 of 12

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 7 of 12

operations, financial or otherwise, of the Borrower as the Lenders may from time to time reasonably request.

## ARTICLE VI
## SECURITY AGREEMENT AND COLLATERAL

The parties hereto hereby acknowledge and agree that this Agreement shall also constitute a security agreement in favor of Lenders for the purpose of securing the repayment of the Loans granted hereunder to Borrower. Borrower and Third Parties hereby grant, as the context shall require, a continuing security interest and Lien in and/or on the following property of Borrower and Third Parties now owned or existing or hereafter acquired or arising, whether tangible or intangible, all of which shall hereafter be referred to collectively as the "Collateral", as security for the payment of the Loans, subject to any existing liens and encumbrances thereon. Lenders shall have the right to file one or more financing statements and to have all certificates of title for all trucks, vehicles and trailers properly endorsed to perfect their security interest in the Collateral as they deem necessary.

SECTION 6.01   Mortgage.  Mortgage on the following parcels or tracts of real property owned by the Third Parties: (i) that certain unimproved 13.084 acres tract, more or less, located in Penn Township, York County, State of Pennsylvania and identified as Parcel Number: 67-44-000-ED-0006-C0-00000; and (ii) that certain improved 21.944 acres, more or less, tract located in the aforesaid Township and identified as Parcel Number: 67-44-000-ED-0035-J0-00000.

SECTION 6.02   Furniture, Fixtures, Equipment, Inventory, and Other Assets.  All of Borrower's furniture, fixtures, machinery, equipment, inventory and all other assets of every kind and description wheresoever located, including, without limitation, all trucks, tractors, trailers and returned or repossessed inventory.

SECTION 6.03   Antique Trucks.  All of Borrower's restored and unrestored antique trucks,traile rs and accessories.

SECTION 6.04   Insurance Cooperative Interest.  All of Borrower's ownership and/or participation interest in or pertaining to Charter Partners Insurance Company.

SECTION 6.05   Risk Retention Claim.  Any and all of Borrower's interest in and to any payment, award, reimbursement and/or settlement relating to or arising from Borrower's pending litigation claim against Carrier Solutions Risk Retention Group.

SECTION 6.06   Collection Priority.  Notwithstanding anything herein to the contrary, Lenders hereby agree that in exercising their rights hereunder upon the occurrence of an Event of Default, Lenders agree to foreclose on the Real Property and the antique trucks only after they have foreclosed and/or exercised their collection rights on all other items of Collateral securing the Loans.

Page 8 of 12

Case 1:10-bk-06657-RNO   Doc 26-2   Filed 08/20/10   Entered 08/20/10 18:46:19   Desc
Exhibit Exhibit B - DIP Financing Agreement   Page 8 of 12

# ARTICLE VII
## EVENTS OF DEFAULT

SECTION 7.01    Events of Default. If any of the following events (hereinafter referred to as "Events of Default") shall occur:

(1)    The Borrower shall fail to pay any installment of interest due under the Note within thirty (30) business days of its due date;

(2)    The Borrower shall fail to pay the principal indebtedness and all accrued but unpaid interest due under the Note on the Termination Date;

(3)    Any representation or warranty made or deemed made by the Borrower in this Agreement or which is contained in any certificate, document, opinion, or financial or other statement furnished at any time under or in connection with any Loan Document shall prove to have been incorrect in any material respect on or as of the date made or deemed made;

(4)    The Borrower shall fail to perform or observe any term, covenant, or agreement contained in any Loan Document (other than the Note) to which it is a party on its part to be performed or observed within fifteen (15) business days following receipt of written notice of its Default;

(5) The Borrower (a) shall generally not, or shall be unable to, or shall admit in writing its inability to pay its debts as such debts become due; or (b) shall make an assignment for the benefit of creditors, petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets; or (c) shall commence any proceeding under any bankruptcy, reorganization, arrangements, readjustment of debt, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or (d) shall have any such petition or application filed or any such proceeding commenced against it in which an order for relief is entered or adjudication or appointment is made and which remains undismissed for a period of sixty (60) days or more; or (e) by any act or omission shall indicate its consent to, approval of, or acquiescence in any such petition, application, or proceeding, or order for relief, or the appointment of a custodian, receiver, or trustee for all or any substantial part of its properties; or (f) shall suffer any such custodianship, receivership, or trusteeship to continue undischarged for a period of sixty (60) days or more.  Notwithstanding the foregoing, Lenders hereby acknowledge and agree that Borrower shall not be deemed in default hereunder pursuant to its pending Chapter 11 Bankruptcy Case;

(6)    The security interest in the Collateral shall at any time and for any reason cease being a valid and perfected security interest in and to the Collateral or (b) shall be declared null and void, or the validity or enforceability thereof shall be contested by the Borrower, or the Borrower shall deny it has any further liability or obligation under this Agreement, or the Borrower shall fail to perform any of its obligations under this Agreement on a timely basis; or

Page 9 of 12

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 9 of 12

(7) The dismissal of the Chapter 11 Bankruptcy Case or the conversion of the case to a Chapter 7 case under the Code;

then, and in any such event, the Lenders may, by notice to the Borrower, (i) declare their obligation to make Loans to be terminated, whereupon the same shall forthwith terminate, and (ii) declare the Note, all interest thereon, and all other amounts payable under this Agreement to be forthwith due and payable, whereupon the Note, all such interest, and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by the Borrower. The Lenders shall have all rights and remedies as provided by law and hereunder upon the occurrence of an Event of Default, subject to the terms and conditions set forth in Article VI herein with respect to priority of collection.

## ARTICLE VIII
## MISCELLANEOUS

SECTION 8.01    Amendments, Etc. No amendment, modification, termination, or waiver of any provision of any Loan Document to which the Borrower is a party, nor consent to any departure by the Borrower from any Loan Document to which it is a party, shall in any event be effective unless the same shall be in writing and signed by the Lenders, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 8.02    Notices, Etc. All notices and other communications provided for under this Agreement and under the other Loan Documents to which the Borrower is a party shall be in writing and mailed by registered or certified mail, return receipt requested, or hand delivered, if to the Borrower, at its address at 860 Gitts Run Road, Hanover, Pennsylvania 17331, Attention: Glenn A. Longstreth, and if to the Lenders, at their address at 6598 York Road, Spring Grove, Pennsylvania 17362, Attention: Helen M. and Lawson E. Longstreth, Sr.; or, as to each party, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section 8.02. All such notices and communications shall be effective when received by the recipient.

SECTION 8.03    No Waiver; Remedies. No failure on the part of the Lenders to exercise, and no delay in exercising, any right, power, or remedy under any Loan Documents shall operate as a waiverthereof; nor shall any single or partial exercise of any right under any Loan Documents preclude any other or further exercise thereof or the exercise of any other right. The remedies provided in the Loan Documents are cumulative and not exclusive of any remedies provided by law.

SECTION 8.04    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Borrower, the Third Parties and the Lenders and their respective representatives, heirs, successors and assigns, except that the Borrower may not assign or transfer any of its rights under any Loan Document to which the Borrower is a party without the

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 10 of 12

prior written consent of the Lenders.

SECTION 8.05  Costs, Expenses, and Taxes. The Borrower agrees to pay on demand all costs and expenses in connection with the preparation, execution, delivery, filing, recording, and administration of any of the Loan Documents. In addition, the Borrower shall pay any and all stamp and other taxes and fees payable or determined to be payable in connection with the execution, delivery, filing, and recording of any of the Loan Documents and the other documents to be delivered under any such Loan Documents, and agrees to save the Lenders harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such taxes and fees.

SECTION 8.06  Governing Law. This Agreement and the Note shall be governed by, and construed in accordance with, the laws of the State of Pennsylvania.

SECTION 8.07  Severability of Provisions. Any provision of any Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of such Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 8.08  Headings. Article and Section headings in the Loan Documents are included in such Loan Documents for the convenience of reference only and shall not constitute a part of the applicable Loan Documents for any other purpose.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

"BORROWER"

L & H Trucking Company, Inc.,
a Pennsylvania corporation

By: _____
Print Name: Glenn A. Longstreet
Its: President

Page 11 of 12

Case 1:10-bk-06657-RNO    Doc 26-2    Filed 08/20/10    Entered 08/20/10 18:46:19    Desc
Exhibit Exhibit B - DIP Financing Agreement    Page 11 of 12

"LENDERS"

*/s/ Lawson E. Longstreth*
Lawson E. Longstreth, Sr.

*/s/ Helen M. Longstreth*
Helen M. Longstreth

"THIRD PARTIES"

*/s/ Glenn A. Longstreth*
Glenn A. Longstreth

_____
Lamanda M. Sullivan

U:\A CLIENTS\L&H Trucking, Inc 2374\-01 Chapter 11\Pleadings\First Day Motions\DIP Financing\Revolving Credit and Security Agreement.docx

Page 12 of 12